UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| FLOYD YOUNG, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  No. 1:18CV102 HEA |
| | ) |
| JARRETT BULLOCK, et al., | ) |
| | ) |
| Defendants. | ) |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on the motion of plaintiff, Floyd Young, Jr., an inmate at the Eastern Reception Diagnostic and Correctional Center ("ERDCC"), for leave to commence this action without payment of the required filing fee. For the reasons stated below, the Court finds that plaintiff does not have sufficient funds to pay the entire filing fee and will assess an initial partial filing fee of $1.00. *See* 28 U.S.C. § 1915(b)(1). Furthermore, based upon a review of the complaint, the Court will dismiss this action pursuant to *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) and 28 U.S.C. § 1915(e)(2)(B).

### Background

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 asserting violations of his Fourth Amendment rights against illegal seizure, false arrest and false imprisonment.

Plaintiff states that on or about July 18, 2015, the Malden Missouri Police Department began investigating a "shots fired" report. As the investigation went on, the Chief of Police, Jarrett Bullock, applied for a warrant for plaintiff's arrest. Later that day, plaintiff claims that he turned himself in to the Police Department. He asserts that a "man ended up dying as a result of the shooting" plaintiff was accused of.

Plaintiff states that he was first questioned in Sheriff Bullock's Office, and "accompanied during the interrogation" by Sergeant Scott Stoelting of the Missouri State Highway Patrol. Plaintiff claims that the interrogation was videotaped and prior to the interrogation plaintiff was read his Miranda rights. When plaintiff refused to talk to Bullock and Stoelting, he purportedly refused to sign his waiver of rights. Plaintiff alleges that when Bullock asked him to speak to the officers, he "shook his head from side to side." Plaintiff states that Bullock and Stoelting continued to attempt to speak to him, "but plaintiff still continued to indicate that he did not want to speak to them." He claims that Bullock and Stoelting tried to make plaintiff talk by making him feel guilty, making him think that other witnesses were telling stories about plaintiff's involvement, warning plaintiff about the evidence they purportedly had on him, and keeping him in the interrogation room for an extended period of time. Plaintiff alleges that this continued for some time, with Bullock and Stoelting continuing to entice plaintiff into speaking to them. Plaintiff states that he was asked to provide a DNA sample, but he refused. He purports that he was made to give a gunshot residue sample from his hands.

Plaintiff alleges that "in the early morning hours of July 19, 2015," Officer Denise Summers from the Malden City Jail came in to have a conversation with plaintiff. She encouraged plaintiff to tell the truth. Plaintiff states that by this time he "wanted to speak to someone." Plaintiff does not indicate what he told Summers. He states only that he believes Summers was contacted by Bullock and Stoelting to talk to plaintiff. He claims that she later told Bullock and Stoelting that plaintiff wanted to speak to them, and this "request from plaintiff was in direct response from the 'fruit of' the improper investigation interrogation the afternoon before."

Plaintiff claims that when Stoelting and Bullock came to talk to him he was again read his Miranda rights and was given a waiver to sign. Plaintiff told them that he had a problem with the form that said "anything you say could be used against you in a court of law." Bullock purportedly told plaintiff that his concern was valid but then switched topics and told plaintiff that anytime he wanted to stop talking he could. Plaintiff asserts that Bullock did not address the issue of his statements being admissible in court. Bullock purportedly told plaintiff they knew he wanted to get things "off his chest" and the form was a "formality." Plaintiff signed the form. Plaintiff alleges he then made several incriminating statements during the interrogation, which allowed Bullock and Stoelting to recover a handgun alleged to have been used in the shooting.

Plaintiff was then charged, along with his co-defendant, with one count of murder in the first degree, one count of murder in the second degree, two counts of armed criminal action, attempted robbery and unlawful use of a weapon. Plaintiff states that the gunshot residue test came back negative, and he claims that Stoelting and Bullock came into possession of information indicating that another individual could have done the shooting. Plaintiff claims he tried to express his concern to defendants but they told him they had their man.

Plaintiff asserts that his attorneys filed a motion to suppress his statements, asserting they were "fruit of the poisonous tree," since they were made after plaintiff allegedly invoke his right to remain silent. However, defendant Prosecutor Ian Page argued that plaintiff's statements should not be suppressed. Shortly prior to trial, Page approached plaintiff's attorneys and told them he would make a deal if plaintiff would plead guilty to a lesser charge. Plaintiff claims that

he pled guilty to manslaughter and armed criminal action and received thirty years' imprisonment in total.[1]

Plaintiff brings this § 1983 action, alleging defendants Bullock and Stoelting violated his Fourth Amendment right to be free of an unreasonable search and seizure without probable cause. Similarly, plaintiff alleges that defendants falsely arrested him and falsely imprisoned him without probable cause. Plaintiff also alleges that defendants Bullock and Stoelting violated his rights under the Sixth Amendment by failing to properly protect plaintiff's *Miranda* rights.

Plaintiff asserts a civil conspiracy claim under Missouri law, 42 U.S.C. § 1983 and § 1985(2) against defendants Bullock, Summers and Stoelting for purportedly "reaching an agreement to detain plaintiff…without probable cause to believe plaintiff had committed a crime."

Plaintiff also alleges that prosecuting attorney Ian Page violated plaintiff's rights by objecting to plaintiff's attorneys' motion to suppress the interrogation statements which lead to the gun used to kill the victim in the criminal action.[2] This claim arises under the Fourth Amendment as well.

Last, plaintiff asserts that the City of Malden and Dunklin County, Missouri, are subject to *Monell* violations because Jarrett Bullock and Sheriff Bob Holder, who are purported

---

[1] *See State v. Young*, No. 15DU-CR00698-01 (35th Judicial Circuit, Dunklin County Court).
[2] Plaintiff claims that he is also asserting a "substantive due process claim against defendants Bullock and Stoelting for purportedly "ignoring leads in the criminal case suggesting plaintiff was innocent. Although labeled as a "substantive due process" claim, it appears that this claim is more properly brought under the Fourth Amendment. "Therefore, a § 1983 plaintiff's claim that he was arrested or prosecuted without probable cause, even if labeled a claim of malicious prosecution, must be judged under the Fourth Amendment, not substantive due process." *Stewart v. Wagner*, 836 F.3d 978, 983 (8th Cir. 2010).

"policymakers" for the County and the municipality, "endorse a custom or policy" of using purported coercive tactics to get suspects in criminal cases to incriminate themselves.

Plaintiff seeks monetary damages in an amount in excess of $2 million.

## Discussion

A prisoner may not recover damages in a § 1983 suit where the judgment would necessarily imply the invalidity of his conviction, continued imprisonment or sentence unless the conviction or sentence is reversed, expunged or called into question by issuance of a writ of habeas corpus. *See Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994); *Schafer v. Moore*, 46 F.3d 43, 45 (8th Cir. 1995); *see also Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (applying rule in § 1983 suit seeking declaratory relief).

Plaintiff has admitted that he is guilty of voluntary manslaughter, as well as armed criminal action, by pleading guilty to the charges against him.[3] See *State v. Young*, No. 15DU-CR00698-01 (35th Judicial Circuit, Dunklin County Court). Thus, arguing in a § 1983 lawsuit that he was wrongly arrested or that the statements against him were false would necessarily imply the invalidity of the crime for which he has pled guilty.[4] As such, *Heck* bars plaintiff's Fourth Amendment claims that he was illegally seized, arrested without probable cause and that he was falsely arrested/falsely imprisoned as a result of fabricated reports.

---

[3] Simple failure to read Miranda warnings to an arrestee does not violate the arrestee's rights and cannot be grounds for a §1983 action. *Chavez v. Martinez*, 538 U.S. 760, 772 (2003). Additionally. the Supreme Court of the United States has held that a criminal defendant waives the privilege against self-incrimination when he enters a plea of guilty. *Godinez v. Moran,* 509 U.S. 389, 397 n. 7 (1993).

[4] Plaintiff did not file a direct appeal of his conviction. He did initially file a post-conviction motion, however, he moved to voluntarily dismiss his motion to vacate not long after filing. *See Young v. State,* No. 18DU-CC00069 (35th Judicial Circuit, Dunklin County Court).

Plaintiff's claims against prosecutor Ian Page are wholly based upon his alleged wrongdoing while initiating and pursuing the State of Missouri's criminal prosecutions of him. However, prosecutors are immune from such claims. *See Imbler v. Pachtman*, 424 U.S. 409, 430–31 (1976) (holding that prosecutors are absolutely immune from civil rights claims based on actions taken while initiating and pursuing a criminal prosecution); *see also Brodnicki v. City of Omaha*, 75 F.3d 1261, 1266 (8th Cir. 1996) ("Absolute immunity covers prosecutorial functions such as the initiation and pursuit of a criminal prosecution, the presentation of the state's case at trial, and other conduct that is intimately associated with the judicial process"); *Sample v. City of Woodbury*, 836 F.3d 913, 916 (8th Cir. 2016) (same). Plaintiff's allegations that Page was out to get him or acted in bad faith does not save his claims. Immunity for the performance of prosecutorial functions is not defeated by allegations of improper motivation. *See Imbler*, 424 U.S. at 427-28 (there is no fraud exception to prosecutorial immunity, and it is better to leave wrongs committed by dishonest officers unredressed than to subject the honest to the constant dread of retaliation); *see, e.g., Wahl v. McIver*, 773 F.2d 1169, 1173 (11th Cir. 1985); *Lerwill v. Joslin*, 712 F.2d 435, 441 (10th Cir. 1983).

Plaintiff's policy and custom claims against Dunklin County, the City of Malden, Sheriff Bob Holder, and Jarrett Bullock, the Chief of Police in the City of Malden, also fail to state a claim upon which relief may be granted.

Plaintiff asserts that the City of Malden and Dunklin County, Missouri, are subject to *Monell* violations because Jarrett Bullock and Sheriff Bob Holder, who are purported "policymakers" for the County and the municipality, "endorse a custom or policy" of using purported coercive tactics to get suspects in criminal cases to incriminate themselves. However,

plaintiff has failed to provide any other factual allegations relating to such a policy. Nonetheless, he asserts that Dunklin County and the City of Malden should be held liable under "*Monell*" for such a policy or custom.

A local governing body can be sued directly under § 1983. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). Municipal liability under § 1983 may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1089 (8th Cir. 2018). *See also Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same"). Thus, there are three ways in which a plaintiff can prove municipal liability.

First, a plaintiff can show the existence of an unconstitutional policy. "Policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016). *See also Russell v. Hennepin Cty.*, 420 F.3d 841, 847 (8th Cir. 2005) ("A policy is a deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible…for establishing final policy with respect to the subject matter in question"). For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is asserted that a municipality should have done more to prevent constitutional violations

by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id*. at 390.

Alternatively, a plaintiff can establish a claim of liability based on an unconstitutional "custom." In order to do so, the plaintiff must demonstrate:

1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013). Finally, a plaintiff can show municipal liability by establishing a deliberately indifferent failure to train or supervise. To do so, the plaintiff must demonstrate a "pattern of similar constitutional violations by untrained employees." *S.M. v Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017).

Plaintiff has not alleged any facts in his complaint that would demonstrate a policy or custom that is unconstitutional or that violates his and others' civil rights. *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of *Monell* claim where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused the alleged deprivation of plaintiff's rights). Accordingly, plaintiff's allegations against defendants regarding *Monell* liability fail to state a claim.

Plaintiff's also states that he is bringing a § 1983 civil conspiracy claim against all of the defendants. To prevail on a § 1983 conspiracy claim, a plaintiff must allege, *inter alia*, the

deprivation of a constitutional right or privilege. *Askew v. Millerd*, 191 F.3d 953, 958 (8th Cir. 1999) (internal citation omitted). As noted above, plaintiff herein has failed to state a viable claim that his constitutional rights were violated, and he therefore cannot maintain a § 1983 conspiracy claim. Even if plaintiff had successfully alleged a constitutional violation, his § 1983 conspiracy claim would fail.

The prosecutor plaintiff has brought claims against is immune from such a claim because his alleged participation consisted of otherwise immune acts, and plaintiff's allegations of conspiracy against the other defendants are wholly conclusory. Allegations of conspiracy must be pled with sufficient specificity and factual support to suggest a "meeting of the minds." *Manis v. Sterling*, 862 F.2d 679, 681 (8th Cir. 1988); *see also Iqbal*, 556 U.S. at 678. Plaintiff has simply failed to do so.

Last, plaintiff asserts that he has been subjected to intentional infliction of emotional distress. Under Missouri law, the tort of intentional infliction of emotional distress has four elements: (1) the defendant must act intentionally or recklessly; (2) the defendant's conduct must be extreme and outrageous; and (3) the conduct must be the cause (4) of severe emotional distress. *See Polk v. Inroads/St. Louis, Inc.*, 951 S.W.2d 646, 648 (Mo. Ct. App. 1997). "Although case law does not provide us with a precise definition of extreme and outrageous, the test adopted by Missouri courts for actionable conduct is that the conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (internal quotations omitted). Additionally, the conduct must be "intended *only* to causes extreme emotional distress to the victim." *See Gibson v. Brewer*, 952 S.W.2d 239, 249 (Mo. 1997) (emphasis added).

Here, plaintiff has not alleged, and the facts do not support, that defendants' sole purpose in their conduct was to cause emotional distress to plaintiff. From plaintiff's own allegations it does not appears that defendants acted with conduct that was so "outrageous in character" and "extreme in degree, as to go beyond all possible bounds of decency." For these reasons, the Court cannot find that plaintiff's allegations plausibly state a claim for intentional infliction of emotional distress under Missouri state law.

Because the Court is dismissing plaintiff's federal claims, the Court will also dismiss any remaining supplemental state claims. *See* 28 U.S.C. § 1367(c)(3).

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed in forma pauperis [Doc. #2] is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff must pay an initial filing fee of $1.00 within thirty (30) days of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.[5]

**IT IS FURTHER ORDERED** that that this action is **DISMISSED** without prejudice pursuant to the doctrine of *Heck v. Humphrey* 512 U.S. 477, 486-87 (1994) and 28 U.S.C. §1915(e)(2)(B).

---

[5]After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner will deduct the payments and forward them to the Court each time the amount in the account exceeds $10. 28 U.S.C. § 1915(b)(2).

**IT IS HEREBY CERTIFIED** that an appeal from this action would not be taken in good faith.

A separate Order of Dismissal shall accompany this Memorandum and Order.

Dated this 29th day of January, 2019.

                                                    HENRY EDWARD AUTREY
                                                    UNITED STATES DISTRICT JUDGE